# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Robert LaRue Brown, Jr., <br><br> Petitioner, <br><br> v. <br><br> Charles L. Ryan, et al., <br><br> Respondents. | No. CV-14-08229-PCT-DJH (BSB) <br><br> **REPORT AND RECOMMENDATION** |

Petitioner Robert LaRue Brown, Jr. has filed a Petition for Writ of Habeas Corpus, pursuant to 28 U.S.C. § 2254, asserting five grounds for relief. (Doc. 1.) In their answer, Respondents assert that the Petition should be dismissed as untimely under the Anti-Terrorism and Effective Death Penalty Act (AEDPA), which provides the statute of limitations applicable to state prisoners seeking federal habeas corpus relief. (Doc. 11.) Alternatively, Respondents argue that Grounds Two and Three are not cognizable on federal habeas corpus review, and that federal habeas corpus review of Grounds Two, Three, and Five is procedurally barred. Petitioner has filed a reply. (Doc. 12.) For the reasons below, the Court finds the Petition untimely, recommends that the Petition be dismissed, and does not consider Respondents' alternative arguments.

## I. Factual and Procedural Background

### A. Charges, Plea, and Sentencing

On January 23, 2003, Petitioner was indicted in the Mojave County Superior Court on second degree murder, a class one felony (Count One), and theft of means of

transportation, a class 3 felony (Count Two).[1]  (Doc. 11, Ex. A.)  On March 31, 2003, Petitioner entered a stipulated guilty plea.  (Doc. 11, Ex. F.)  The plea agreement provided that Petitioner would plead guilty to manslaughter and theft of means of transportation.  (*Id.* at 1-2.)  On March 31, 2003, the trial court accepted the guilty plea, concluding that Petitioner's plea was "knowing, intelligent, and voluntary."  (Doc. 11, Ex. G.)

Before sentencing, the trial court received letters from Petitioner requesting to withdraw from the guilty plea.  (Doc. 11, Exs, H, I.)  The trial court forwarded the letters to Petitioner's counsel.  (*Id.*)  On June 16, 2003, defense counsel moved to withdraw due to a conflict of interest.  (Doc. 11, Ex. J.)  The trial court granted the motion, and later appointed Mark A. Sippel to represent Petitioner in further proceedings.  (Doc. 11, Exs. K, L.)

On August 1, 2003, defense counsel requested a diagnostic evaluation and mental examination pursuant to Arizona Rule of Criminal Procedure 26.5, and the trial court granted the request.  (Doc. 11, Exs M, N.)  The Mohave Mental Health Rule 26.5 Psychological Evaluation (Rule 26.5 report) was submitted to the trial court before sentencing.[2]  (Doc. 11, Ex. FF, at 3-4.)  Defense counsel also submitted a mitigation report completed by an investigator.  (Doc. 11, Ex. O.)

On October 24, 2003, the trial court held an aggravation and mitigation hearing.  (Doc. 11, Ex. FF.)  The trial court stated that it had read the presentence investigation report, the letters submitted by interested parties, the "Rule 26.5 diagnostic evaluation from Mohave Mental Health," and the mitigation report.  (*Id.* at 4-5.)  After considering arguments from counsel and testimony from the victim's family members, the trial court

---

[1] Petitioner was charged with killing his mother and taking her car to drive to California.  (Doc. 11, Exs. A, P.)

[2] The Rule 26.5 report is contained in the appendix to Respondents' Exhibit Z, which is Petitioner's petition for review to the Arizona Court of Appeals.  (Doc. 11, Ex. Z.)  The Rule 26.5 report is Appendix B to the petition for review.  (Doc. 11, Ex. Z, Appendix B.)  For ease of reference, the Court cites to the Rule 26.5 report by its CM/ECF document and page numbers.  (Doc. 11-3 at 49-55.)

imposed a "slightly aggravated" four-year term of imprisonment on the theft of means of transportation conviction, and a concurrent, aggravated twenty-one-year term of imprisonment on the manslaughter conviction. (*Id.* at 27-30; Doc. 11, Ex. Q.)

## B.    Rule 32 "Of-Right" Proceeding

On October 24, 2003, Petitioner filed a notice of post-conviction relief in the trial court to commence an "of-right" proceeding under Arizona Rule of Criminal Procedure 32.[3] (Doc. 11, Ex. R.) The trial court appointed counsel. (Doc. 11, Ex. S.) Counsel filed a petition for post-conviction relief arguing that trial counsel was ineffective at sentencing, the trial court improperly considered aggravating factors, and Petitioner's sentence violated *Blakely v. Washington*, 542 U.S. 296 (2004), because the trial court, rather than a jury, determined the aggravating factors. (Doc. 11, Ex. U at 3.) Petitioner submitted his mental health records from his incarceration at the Los Angeles County Jail, where he was held upon his arrest, and from the Arizona Department of Corrections as exhibits to his petition. (Doc. 11, Ex. U - exhibits A and B.)[4] On January 10, 2005, the trial court concluded that Petitioner failed to present any colorable claims and denied post-conviction relief. (Doc. 11, Ex. X.)

After receiving an extension of time, on March 1, 2005, Petitioner filed a petition for review in the Arizona Court of Appeals.[5] (Doc. 11, Ex. Z.) Petitioner raised the same claims he had presented in his petition for post-conviction relief. (*Compare* Doc. 11,

---

[3] Because Petitioner pled guilty, his only avenue of direct review was a Rule 32 "of-right" proceeding. *See* Ariz. Rev. Stat. § 13-4033(B) ([I]n noncapital cases a defendant may not appeal from a judgment or sentence that is entered pursuant to a plea agreement . . . ."); Ariz. R. Crim. P. 32.1 ("[a]ny person who pled guilty or no contest . . . shall have the right to file a post-conviction relief proceeding, and this proceeding shall be known as a Rule 32 of-right proceeding").

[4] Respondents' Exhibit U is Petitioner's petition for post-conviction relief. (Doc. 11, Ex. U.) That petition has two exhibits, A and B. For ease of reference, the Court refers to those exhibits by the CM/ECF document and page numbers. (Doc. 11-2 at 19-44 and Doc. 11-2 at 45-123.)

[5] Respondents state that Petitioner attached an appendix with several exhibits to his petition for review. Respondents identify those exhibits and state that other than exhibit B, the Rule 26.5 report, they did not attach the exhibits to petition for review because those documents appear elsewhere in the record. (Doc. 11 at 12 n.8.)

Ex. U *with* Doc. 11, Ex. Z.)  On March 2, 2006, the appellate court denied review. (Doc. 11, Ex. BB.)  Petitioner, through counsel, filed a petition for review in the Arizona Supreme Court, raising the same issues presented in the petition for review filed in the Arizona Court of Appeals.[6]  (*Compare* Doc. 11, Ex. Z *with* Doc. 11, Ex. BB.)  On September 27, 2006, the Arizona Supreme Court summarily denied review.  (Doc. 11, Ex. CC.)  On October 3, 2006, counsel moved to withdraw, and the trial court granted her request.  (Doc. 11, Ex. DD.)

### C. Petition for Writ of Habeas Corpus

On November 25, 2014, Petitioner filed the pending Petition for Writ of Habeas Corpus.  (Doc. 1.)  Petitioner raises the following five grounds for relief: (1) trial counsel was ineffective at sentencing for failing to investigate and present mental health mitigation evidence and for failing to provide evidence of Petitioner's mental health to the Rule 26.5 evaluator (Ground One); (2) the trial court erroneously considered aggravating factors when sentencing Petitioner in violation of the Fifth and Fourteenth Amendments (Ground Two); (3) the trial court erred in finding that the murder was cruel, heinous, or depraved pursuant to Ariz. Rev. Stat. § 13-702(C)(5), in violation of the Fifth and Fourteenth Amendments (Ground Three); (4) the trial court violated the Sixth and Fourteenth Amendments and the *Blakely* decision because the trial court, not a jury, determined the aggravating factors (Ground Four); and (5) counsel for Petitioner's Rule 32 of-right proceeding was ineffective for failing to request to withdraw the plea agreement (Ground Five).  (Doc. 1 at 6-12.)  As set forth below, the Court finds the Petition untimely and recommends that it be dismissed on that basis.

///

///

///

---

[6] Respondents state that Petitioner attached an appendix with several exhibits to his petition for review to the Arizona Supreme Court.  Respondents identify those exhibits and state that they did not file the appendix because the documents contained in the appendix are attached elsewhere in the record.  (Doc. 11 at 12 n.9.)

## II. Statute of Limitations

### A. Commencement of the Limitations Period

The AEDPA provides a one-year statute of limitations for state prisoners to file petitions for writ of habeas corpus in federal court. 28 U.S.C. § 2244(d)(1). The limitations period generally commences on "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A).[7] Therefore, to assess the timeliness of the Petition, the Court determines the date on which Petitioner's judgment of conviction became "final by the conclusion of direct review." 28 U.S.C. § 2244(d)(1)(A). By pleading guilty, Petitioner was precluded from pursuing a direct appeal in the Arizona Court of Appeals. *See* Ariz. Rev. Stat. §13-4033(B). Rather, Petitioner could seek review of his conviction and sentence in an "of-right" proceeding pursuant to Rule 32, which is the functional equivalent of a direct appeal. *See* Ariz. R. Crim. P. 32.1 and 32.4.; *Summers v. Schriro*, 481 F.3d 710, 715-16 (9th Cir. 2007) (noting that Arizona courts consider Rule 32 of-right proceedings a form of direct review).

As Respondents note (Doc. 11 at 10), on October 24, 2003, Petitioner filed a timely notice of post-conviction relief to commence a Rule 32 of-right proceeding. (Doc. 11, Exs. Q, R); *see* Ariz. R. Crim. P. 32.1, 32.4(a) ("In a Rule 32 of-right proceeding, the notice must be filed within ninety days after the entry of judgment and sentence or within thirty days after the issuance of the final order or mandate by the

---

[7] The statute of limitations commences on the latest of the dates determined by applying §§ 2244(d)(1)(A) through (D). *See* 28 U.S.C. §§ 2244(d)(1)(A)-(D). Petitioner does not make any allegations indicating that subsections (B), (C), or (D) should apply, or that application of any of these subsections would result in a starting date for the statute of limitations that is later than the date determined under § 2244(d)(1)(A).

Petitioner might argue that § 2244(d)(1)(C) applies and that the limitations period did not commence until the Supreme Court decided *Blakely* on June 24, 2004. *See* 28 U.S.C. § 2241(d)(1)(A) (providing that the limitations period commences on "the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review.") However, if the limitations period commenced on that date, it would have expired on June 25, 2005, before Petitioner's conviction became final on direct review. *See* Section II.A. Accordingly, § 2244(d)(1)(C) does not supply the starting date for the one-year limitations period.

appellate court in the petitioner's first petition for post-conviction relief proceeding."). After the trial court denied relief, Petitioner sought review in the appellate court. (Doc. 11, Ex. Z.) The appellate court denied review on March 2, 2006, and Petitioner filed a petition for review in the Arizona Supreme Court. (Doc. 11, Exs. AA, BB.) On September 27, 2006, the Arizona Supreme Court denied review. (Doc. 11, Ex. CC.)

Because Petitioner's Rule 32 of-right proceeding is considered a form of direct review, his conviction become final for purposes of § 2244(d)(1)(A) upon the expiration of the ninety-day period to petition the United States Supreme Court for writ of certiorari, or on December 26, 2006. *See* 28 U.S.C. § 2244(d)(1)(A) (providing AEDPA statute of limitations begins "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review"); *Summers*, 481 F.3d at 717 (when an Arizona petitioner's Rule 32 proceedings were of-right, the "AEDPA's statute of limitations did not begin to run until ninety days after the Arizona Supreme Court denied [the petitioner's] petition for review"). Therefore, the one-year limitations period commenced the next day, December 27, 2006, and expired one year later, on December 27, 2007. *See Patterson v. Stewart*, 251 F.3d 1243, 1245-47 (9th Cir.2001) (the AEDPA limitations period begins to run on the day after the triggering event pursuant to Fed. R. Civ. P. 6(a)). Because Petitioner did not file his Petition until November 25, 2014, it is untimely unless statutory tolling, equitable tolling, or an exception to the statute of limitations applies.

### B. Statutory Tolling

Pursuant to the AEDPA, the one-year limitations period is tolled during the time that a "properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." 28 U.S.C. § 2244(d)(2); *see Nino v. Galaza*, 183 F.3d 1003, 1006 (9th Cir. 1999) (stating that an application for collateral review is pending in State court for "all the time during which a state prisoner is attempting, through proper use of state court procedures, to exhaust state remedies with regard to particular post-conviction proceedings."). Petitioner is not entitled to statutory

tolling because he did not file any state post-conviction proceedings after the conclusion of his Rule 32 of-right proceeding. *See* 28 U.S.C. § 2244(d)(2).

### C.     Equitable Tolling or Exception to the Statute of Limitations

The AEDPA limitations period may be equitably tolled because it is a statute of limitations, not a jurisdictional bar. *Holland v. Florida*, 560 U.S. 631, 645 (2010). However, a petitioner is entitled to equitable tolling only if he shows: "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." *Pace v. DiGuglielmo,* 544 U.S. 408, 418 (2005). "The diligence required for equitable tolling purposes is reasonable diligence, not maximum feasible diligence." *Holland*, 560 U.S. at 653 (internal citations and quotations omitted). Whether to apply the doctrine of equitable tolling "'is highly fact-dependent,' and [the petitioner] 'bears the burden of showing that equitable tolling is appropriate.'" *Espinoza-Matthews v. California*, 432 F.3d 1021, 1026 (9th Cir. 2005) (internal citations omitted). "When considering whether to apply equitable tolling, the Supreme Court has emphasized the need for 'flexibility' and for 'avoiding mechanical rules.'" *Nedds v. Calderon*, 678 F.3d 777, 780 (9th Cir. 2012) (quoting *Holland*, 560 U.S. at 650).

Petitioner acknowledges that his Petition is untimely. (Doc. 1 at 14.) He argues that equitable tolling applies because: (1) he "has been on has been on a regimen[] of psychoactive prescriptions drugs to stabilize his mental state. He is currently under the care of the Dept. of Corrections Psychiatric Dept., and for the first time is cognizant of his Pro Per rights to pursue a Habeas Review"; and (2) the "recent Supreme Court Decision of *Martinez v. Ryan* should apply to the Petitioner's Constitutional rights to allow initial post-conviction ineffective assistance claims be presented." (Doc. 1 at 14; Doc. 12 at 5-6.) As Respondents argue (Doc. 11 at 16-21), neither reason justifies equitably tolling the AEDPA limitations period.

/ / /

/ / /

/ / /

**1. Mental Health Issues do not Toll the Limitations Period**

In *Bills v. Clark*, 628 F.3d 1092, 1099-1100 (9th Cir. 2010), the Ninth Circuit set forth a two-part test to determine when a habeas petitioner is eligible for equitable tolling based on a mental impairment. To establish such tolling, a petitioner must show:

> (1) [h]is mental impairment was an 'extraordinary circumstance' beyond his control . . . by demonstrating the impairment was so severe that either
>
>> (a) petitioner was unable rationally or factually to personally understand the need to timely file, or
>>
>> (b) petitioner's mental state rendered him unable personally to prepare a habeas petition and effectuate its filing[; and]
>
> (2) [d]iligence in pursuing the claims to the extent he could understand them, but that the mental impairment made it impossible to meet the filing deadline under the totality of the circumstances, including reasonably available access to assistance.

*Id.* at 1099-1100; *see also Yow Ming Yeh v. Martel*, 751 F.3d 1075, 1078 (9th Cir. 2014) (noting the *Bills* standard "reiterates the stringency of the overall equitable tolling test" and "the mental impairment must be so debilitating that it is the but-for cause of the delay, and even in cases of debilitating impairment the petitioner must still demonstrate diligence").

As Respondents argue, Petitioner's allegations regarding his mental health are insufficient to justify equitably tolling the limitations period. *See Lawrence v. Florida*, 549 U.S. 327, 337 (2007) (finding claim of mental incapacity was not an "extraordinary circumstance" requiring equitable tolling when petitioner "made no factual showing of mental incapacity"); *Ata v. Scutt*, 662 F.3d 736, 742 (6th Cir. 2011) (noting "a blanket assertion of mental incompetence is insufficient to toll the statute of limitations" and that "a causal link between the mental condition and untimely filing is required.").

To support his assertion that a mental impairment prevented him from filing a timely federal petition for writ of habeas corpus, Petitioner states that he "had been prescribed and is currently still prescribed some . . . mental health prescription drugs," which he lists. (Doc. 1 at 11.) To further support his claim, Petitioner relies on the memorandum of points and authorities included in his petition for post-conviction relief

- 8 -

filed in the trial court in 2004, and the memorandum he filed in the appellate court on review of the trial court's denial of post-conviction relief. (Doc. 1 at 14 (citing to the attached memoranda); Doc. 1, Exs. A, C ).)

In his petition for post-conviction relief, Petitioner argued that trial counsel was ineffective for failing to present evidence regarding Petitioner's mental health to the Rule 26.5 evaluator and the trial court. (Doc. 1 at 18.) Petitioner argued that he took prescribed medication for his mental health when he was incarcerated in the Los Angeles County Jail in 2003, shortly before he was transferred to Arizona for his criminal trial. (Doc. 1 at 20.) Petitioner also argued that records from the Los Angeles County Jail indicated that he was suicidal, on suicide watch at the jail, diagnosed with substance-induced mood disorder and a major depressive disorder, and prescribed antidepressant and mood stabilizing medications. (*Id.*) That memorandum also noted that during 2004, Petitioner was treated at the Arizona Department of Corrections for bipolar disorder with mixed psychosis, and was prescribed medications. (*Id.*) Petitioner raised these same issues in his petition for review. (Doc. 1 at 41-42.) Petitioner does not present any other evidence to support his claim that an alleged mental impairment and treatment with "psychoactive" prescription medication prevented him from filing a timely petition for writ of habeas corpus. (Docs. 1, 12.)

In their answer to the petition for writ of habeas corpus, Respondents accurately note that the most recent medical evidence in the record is from 2004. (Doc. 11 at 17; Doc. 11-2 at 19-123.) Respondents also note that, other than a handwritten list of his past and current medications, Petitioner has not provided evidence related to his mental health or mental health care during the relevant period — the time from when the AEDPA statute of limitations commenced and was running. (Doc. 11 at 17 (citing Doc. 1 at 11).)

The record before the Court includes evidence that Petitioner had some mental health issues at least until 2004, and that he received some mental treatment while in the Los Angeles County Jail and the Arizona Department of Corrections. (Doc. 11-2 at 19-123; Doc. 1 at 16-20.) The record also indicates that Petitioner took "mental health"

medications in the past, and currently takes some "mental health" medication. (Doc. 1 at 11, 14.) However, the record does not include evidence of Petitioner's mental health treatment during the period that the AEDPA statute of limitations was running, December 27, 2006 through December 27, 2007, or during the period after the limitations period expired through the date Petitioner filed his pending Petition.

Petitioner bears the burden of proving that equitable tolling is appropriate. *Pace*, 544 U.S. at 418. In their answer, Respondents assert that Petitioner has not presented evidence of how his mental health prevented him from filing a timely petition for writ of habeas corpus. (Doc. 11 at 17.) However, aside from stating that he had "semi or severe depression" (Doc. 12 at 6), Petitioner's reply does not include further evidence or discussion of Petitioner's mental health or how it prevented him from filing a timely petition for writ of habeas corpus in this Court. (Doc. 12.) Thus, Petitioner has not satisfied his burden of showing that equitable tolling is appropriate in this case. *See Bevel v. Ryan*, 2014 WL 1410449, at *3 (D. Ariz. Apr. 11, 2014) (concluding that petitioner's unsupported statements did not establish that the severity of his mental impairment prevented him from filing a timely petition for writ of habeas corpus).

Additionally, the evidence in the record does not demonstrate that Petitioner had a mental impairment that was so severe that he was unable to file a timely petition for writ of habeas corpus. *See Bills*, 628 F.3d at 1099-1100; (*See* Doc. 11-2 at 19-123; Doc. 11-3 at 49-55.) The psychologist who examined Petitioner for the Rule 26.5 evaluation, Dr. Mark Harvancik, concluded that Petitioner made an "unsophisticated attempt to appear mentally ill," and his "profile appeared to be characteristic of individuals who are feigning a mental disorder and is rarely seen in clients responding truthfully." (Doc. 11-3 at 54.) The psychologist concluded that "while [Petitioner] might have been exhibiting some signs and symptoms of either a depressive disorder or a mood disorder, possibly associated with being incarcerated, along with evidence of substance dependence, he presented with what appeared to be ingrained antisocial patterns and behaviors which are not amenable to change through therapeutic or psychiatric interventions." (*Id.* at 55.)

- 10 -

Dr. Harvancik noted that Petitioner referred to treatment he received while incarcerated, but he did not have those records. (Doc. 11-3 at 54-55.)

At sentencing, the trial court acknowledged that it received the Rule 26.5 report. (Doc. 11, Ex. FF at 3-4.) The court stated that although there was evidence that Petitioner had some "emotional and behavioral issues," they did not appear to "impair [his] judgment" and "the record is rather clear in that [Petitioner] as a manipulator is attempting to place the blame in something other than where it should lay, and that would be upon him." (Doc. 11, Ex. FF at 27-30.)

On post-conviction review, Petitioner argued that trial counsel was ineffective for failing to present additional evidence of Petitioner's mental health to the Rule 26.5 evaluator and to the trial court. (Doc. 11, Ex. U at 3.) As exhibits to his petition, Petitioner attached his mental health records from his incarceration in the Los Angeles County Jail and the Arizona Department of Corrections. (Doc. 11-2 at 19-123.) In its response to the petition for post-conviction relief, the State indicated that it forwarded those records to Dr. Harvancik, the Rule 26.5 evaluator, and Dr. Harvancik stated that "the records generally confirm his original observations in his report to the Court" and that "he still believes [Petitioner] was feigning and exaggerating his symptoms." (Doc. 11, Ex. V at 1-2.) The post-conviction court concluded that the mental health records "records reveal no significant mental health issue." (Doc. 11, Ex. X.) The appellate court affirmed that ruling. (Doc. 11, Ex. AA.)

Upon review of the record, the Court concludes that Petitioner has not met his burden of showing that he had a severe mental impairment that constitutes an extraordinary circumstance. *See Bills*, 628 F.3d at 1099-1100; *Roberts v. Marshall*, 627 F.3d 768, 770-73 (9th Cir. 2010) (concluding that petitioner's alleged mental health issues did not warrant equitable tolling when medical records showed that although petitioner was taking "psychotropic medications to treat his severe psychotic depression disorder before and during the statute of limitations period," the records also showed that petitioner's "mental functions were repeatedly classified as 'good,' 'fair,' or 'within

1  normal limits.'"). Petitioner claims that he has been on a regimen of psychoactive
2  prescription drugs to stabilize his mental state, but fails to identify any specifics, such as
3  his diagnosis, the relevant dates, or the duration of any mental health issues. (Doc. 1 at
4  14.) Petitioner also includes a list of medications that he either took in the past or
5  currently takes. (Doc. 1 at 11.) However, he does not indicate what medications he was
6  taking during the relevant time, which is after the limitations period commenced on
7  December 27, 2006 and when the limitations period was running. Although the record
8  includes evidence that Plaintiff received some mental health treatment until at least 2004,
9  Petitioner does not attempt to relate that treatment to the relevant time period, or to
10 explain how it interfered with his ability to file a timely petition for writ of habeas corpus
11 in this Court.

Additionally, Petitioner has not shown that he acted diligently in pursuing his claims. *See Bills*, 628 F.3d at 1101. Petitioner's Rule 32 of-right proceedings concluded on September 27, 2006. (Doc. 11, Ex. CC.) Petitioner did not take any action to pursue his claims until he filed a habeas corpus petition with this Court on November 25, 2014. Petitioner does not explain what efforts he made to pursue his claims during those eight years, and does not explain how his alleged mental health impairment prevented him from filing his petition during those eight years. *See Bills*, 628 F.3d at 1101 (stating to show diligence, a petition "must diligently seek assistance and exploit whatever assistance is reasonably available," or must show that his "mental impairment prevented him from locating assistance or communicating with or sufficiently supervising any assistance actually found"); *Lopez v. Felker*, 536 F. Supp. 2d 1154, 1158-59 (C.D. Cal. 2008) (concluding that equitable tolling was not warranted despite medical records showing depression, auditory hallucinations, attempted suicide, hospitalization, and medication for depression because the records did not "establish that Petitioner's alleged mental illness made it impossible for him to file his federal habeas petition on time").

Petitioner asserts that equitable tolling is appropriate because "for the first time he is cognizant of his Pro Per rights to a Habeas Review." (Doc. 1 at 14.) However, "a pro

se petitioner's lack of legal sophistication is not, by itself, an extraordinary circumstance warranting equitable tolling." *Rasberry v. Garcia*, 448 F.3d 1150, 1154 (9th Cir. 2006); *see also Waldron-Ramsey*, 556 F.3d at 1013 n.4 ("[A] pro se petitioner's confusion or ignorance of the law is not, itself, a circumstance warranting equitable tolling.") Additionally, a lack of knowledge of the AEDPA's one-year statute of limitations is not sufficient to warrant equitable tolling. *See Johnson v. United States*, 544 U.S. 295, 311 (2005). Accordingly, the Court concludes that equitable tolling is not appropriate.

**2.     The *Martinez* Decision does not Toll the Limitations Period**

Petitioner also argues that the Supreme Court's decision in *Martinez v. Ryan*, __ U.S.__, 132 S. Ct 1309 (2012), delays or tolls the AEDPA limitations period. (Doc. 1 at 14; Doc. 12 at 5.) *In Martinez*, the Supreme Court held that, under limited circumstances, the ineffective assistance of post-conviction counsel could constitute cause to excuse the procedural default of a claim of ineffective assistance of counsel. *Martinez*, 132 S. Ct. at 1315; see *also Ha Van Nguyen v. Curry*, 736 F.3d 1287, 1293-95 (9th Cir. 2013) (extending the holding in Martinez to claims of ineffective assistance of appellate counsel).

The *Martinez* decision does not address the timeliness of a habeas petition or the tolling of the AEDPA limitations period. *See Wheelwright v. Wofford*, 2014 WL 3851155, at *3 (E.D. Cal. Aug. 5, 2014) ("Although the rule in *Martinez* is an equitable one, it applied only to procedural default issues and does not apply to equitable tolling principles pertinent to the AEDPA limitations issue."); *see also White v. Martel*, 601 F.3d 882, 884 (9th Cir. 2010) (the adequacy analysis used to decide procedural default issues is inapplicable to the determination of whether a federal habeas petition was barred by the AEDPA statute of limitations); *Moreno v. Ryan*, 2014 WL 24151, at *1 (D. Ariz. Jan. 2, 2014) (rejecting the petitioner's claim that *Martinez* delayed the start of the limitations period pursuant to 28 U.S.C. § 2244(d)(1)(C) and finding that "*Martinez* has no applicability to this action as it does not concern the timeliness of a habeas petition.").

### 3.     Actual Innocence Exception

Finally, Petitioner has not established that he has a credible claim of actual innocence that constitutes an equitable exception to the one-year statute of limitations.[8] (Docs. 1, 12.)  In *McQuiggin v. Perkins*, ___ U.S. ___, 133 S. Ct. 1924, (2013), the United States Supreme Court recognized an exception to the AEDPA statute of limitations for a claim of actual innocence.  The Court adopted the actual innocence gateway previously recognized in *Schlup v. Delo*, 513 U.S. 298, 314-15 (1995), for excusing the bar to federal habeas corpus review of procedurally defaulted claims. *McQuiggin*, 133 S. Ct. at 1928 (citing *Schlup*, 513 U.S. at 937-38.)

The rule announced in *McQuiggin* does not provide for an extension of the time statutorily prescribed, but instead is an equitable exception to § 2244(d)(1). *McQuiggin*, 133 S. Ct. at 1931.  Actual innocence, if proven, merely allows a federal court to address the merits of a petitioner's otherwise time-barred constitutional claims; the Supreme Court has not yet addressed whether "a freestanding claim of actual innocence" provides a separate basis for granting habeas relief. *Id*.

To pass through the *Schlup* gateway, a "petitioner must show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence." *Schlup*, 513 U.S. at 316.  *Schlup* requires a petitioner 'to support his allegations of constitutional error with new reliable evidence — whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence — that was not presented at trial.'" *Lee v. Lampert*, 653 F.3d 929, 938 (9th Cir. 2011) (quoting *Schlup*, 513 U.S. at 324).  Petitioner has not presented new evidence and has not shown that failure to consider his claims will result in a fundamental miscarriage of justice. (Docs. 1, 12.)  Thus, he has not met *Schlup's* high standard and this exception does not excuse his untimely filing.

/ / /

---

[8] Although Petitioner does not raise this issue, the Court addresses it because Respondents discussed it in their answer.  (Doc. 11 at 20-21.)

- 14 -

### III. Conclusion

Petitioner did not file the pending habeas petition until November 25, 2014, nearly seven years after the statute of limitations expired on December 27, 2007. Therefore, the petition is untimely. As set forth above, statutory tolling does not apply and Petitioner's assertions about his mental health issues and the Supreme Court's decision in *Martinez* do not warrant equitably tolling the limitations period. Additionally, Petitioner has not established a fundamental miscarriage of justice to warrant an exception to the statute of limitations. Finally, Petitioner's lack of familiarity with the law and lack of legal assistance do not constitute extraordinary circumstances sufficient to toll the limitations period. *See Ballesteros v. Schriro*, 2007 WL 666927, at *5 (D. Ariz. Feb. 26, 2007) (a petitioner's pro se status, ignorance of the law, lack of representation during the applicable filing period, and temporary incapacity do not constitute extraordinary circumstances).

Because Petitioner has not presented any circumstance that would justify equitably tolling or avoiding the AEDPA statute of limitations, his § 2254 habeas petition should be denied as untimely. Therefore the Court does not consider Respondents' alternative grounds for denying habeas corpus relief.

Accordingly,

**IT IS RECOMMENDED** that the Petition for Writ of Habeas Corpus (Doc. 1) be **DENIED**.

**IT IS FURTHER RECOMMENDED** that a Certificate of Appealability and leave to proceed in forma pauperis on appeal be **DENIED** because the dismissal of the Petition is justified by a plain procedural bar and reasonable jurists would not find the procedural ruling debatable and because Petitioner has not made a substantial showing of the denial of a constitutional right.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment. The parties shall have

fourteen days from the date of service of a copy of this recommendation within which to file specific written objections with the Court. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6, 72. Thereafter, the parties have fourteen days within which to file a response to the objections. Failure to file timely objections to the Magistrate Judge's Report and Recommendation may result in the acceptance of the Report and Recommendation by the District Court without further review. *See United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003). Failure to file timely objections to any factual determinations of the Magistrate Judge may be considered a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the Magistrate Judge's recommendation. *See* Fed. R. Civ. P. 72.

Dated this 9th day of June, 2015.

_____
Bridget S. Bade
United States Magistrate Judge